[Cite as *In re D.T.*, 2026-Ohio-1669.]

**IN THE OHIO COURT OF APPEALS**
**FIFTH APPELLATE DISTRICT**
**STARK COUNTY, OHIO**

| | |
|---|---|
| IN RE D.T. JR. | Case No. 2025CA00186 |
| | <u>Opinion And Judgment Entry</u> |
| | Appeal from the Court of Common Pleas, Family Court Division, Case No. 2024JCV00515 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: May 6, 2026 |

**BEFORE:** Andrew J. King; Craig R. Baldwin; Kevin W. Popham, Judges

**APPEARANCES:** RICHARD D. HIXSON, for Appellant-Mother; BRANDON J. WALTENBAUGH, for Appellee-Agency.

*King, P.J.*

{¶ 1} Appellant mother, A.M., appeals the December 1, 2025 judgment entry of the Stark County Family Court terminating her parental rights and granting permanent custody of the child to appellee, Stark County Department of Job and Family Services ("SCJFS"). We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On May 15, 2024, SCJFS filed a complaint for the temporary custody of D.T. Jr., born March 2024, alleging the child to be dependent, neglected, and/or abused. Mother of the child is A.M., appellant herein; father is D.T. and is not a part of this appeal. SCJFS has had extensive involvement with mother and her three other children who were placed in the legal custody of maternal grandmother. *See* Case Nos. 2019JCV01161,

2019JCV01162, and 2019JCV01163. The concerns with D.T. Jr. centered on allegations of mother's continued substance abuse, homelessness, and mental health issues. The child was placed in shelter care on May 15, 2024; case plans were filed.

{¶ 3} An adjudicatory and dispositional hearing was held on July 17, 2024, wherein mother stipulated to dependency; the allegations of neglect and abuse were dismissed. The trial court continued the child's temporary custody with SCJFS.

{¶ 4} Case reviews were held on November 14, 2024, and April 11, 2025. On September 23, 2025, SCJFS filed a motion for permanent custody of the child. An additional case review was conducted on October 9, 2025. A hearing on the permanent custody motion was held on November 24, 2025. By judgment entry filed December 1, 2025, the trial court terminated all parental rights and granted permanent custody of the child to SCJFS; findings of fact and conclusions of law were filed contemporaneously with the judgment entry.

{¶ 5} Mother filed an appeal with the following assignments of error:

I

{¶ 6} "THE TRIAL COURT'S FINDING THAT THE MINOR CHILD WAS IN THE TEMPORARY CUSTODY OF THE AGENCY FOR TWELVE OR MORE MONTHS OF A CONSECUTIVE TWENTY-TWO MONTH PERIOD VIOLATED MOTHER'S RIGHT TO DUE PROCESS, AS SHE WAS NOT GIVEN NOTICE AND AN OPPORTUNITY TO BE HEARD."

II

{¶ 7} "THE TRIAL COURT ERRED IN FINDING THAT THE MINOR CHILD COULD NOT BE PLACED WITH MOTHER WITHIN A REASONABLE TIME AND SHOULD NOT BE SO PLACED."

## III

{¶ 8} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD."

## I

{¶ 9} In her first assignment of error, mother claims her due process rights were violated because she was not given notice and an opportunity to be heard on the issue of the child being in the temporary custody of the agency for twelve or more months of a consecutive twenty-two-month period. We disagree.

{¶ 10} R.C. 2151.414(B)(1)(d) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . ." "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

{¶ 11} In its December 1, 2025 judgment entry, the trial court found the child "has been in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period." Mother argues the agency failed to include any allegations in the motion for permanent custody regarding R.C. 2151.414(B)(1)(d) and therefore she was denied the opportunity to be heard on this issue. Appellant's Brief at 8. Mother does not cite to any cases that hold a trial court is precluded from finding the twelve of twenty-two factor if the motion for permanent custody is silent on the issue.

{¶ 12} Although the motion for permanent custody did not list R.C. 2151.414(B)(1)(d) as a factor, the motion included the history and dates of the case, and testimony on the issue was presented during the hearing which was subject to cross-examination. T. at 10-11. As noted by mother, the trial court granted permanent custody "in part" on the R.C. 2151.414(B)(1)(d) factor. Appellant's Brief at 8. Notwithstanding the R.C. 2151.414(B)(1)(d) finding, the trial court also found mother failed continuously and repeatedly to comply with her case plan. If any error occurred, we find it to be harmless given the trial court's alternative determination on R.C. 2151.414(B)(1)(a), "reasonable time." Civ.R. 61.

{¶ 13} Assignment of Error I is denied.

## II, III

{¶ 14} In her second and third assignments of error, mother claims the trial court erred in finding the child could not be placed with her within a reasonable time and permanent custody was in the best interest of the child. We disagree.

{¶ 15} Mother argues the trial court abused its discretion in this case. Appellant's Brief at 9, 13. Abuse of discretion is the incorrect standard. The proper standards of review to apply in permanent custody cases under R.C. 2151.414 are sufficiency of the evidence and/or manifest weight of the evidence. *In re Z.C.*, 2023-Ohio-4703, ¶ 18.

{¶ 16} Sufficiency of the evidence "is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict [decision] is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).

{¶ 17} Under a manifest weight of the evidence standard, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the

jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). In *Thompkins* at 387, quoting Black's Law Dictionary (6th Ed. 1990), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis in original.)

{¶ 18} In weighing the evidence, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179.

{¶ 19} R.C. 2151.414(B)(1)(a) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must conduct when ruling on a motion for permanent custody.

{¶ 20} Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 21} R.C. 2151.414(E) sets out the factors relevant to determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Said section states in pertinent part the following:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and

repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(16) Any other factor the court considers relevant.

{¶ 22} Mother completed a parenting evaluation and was to follow all recommendations which included drug and alcohol treatment, mental health treatment, maintain housing, and obtain and maintain employment. T. at 11-12. The trial court made extensive, detailed findings of fact and found mother "failed continuously and repeatedly to substantially remedy the conditions" that caused the child to be placed outside the home. The trial court's findings are amply supported in the record, including through mother's own testimony. T. at 5-9, 13-23, 25-26, 28-30, 35-38, 41-46, 48-49, 59-61, 64-69, 82, 83-84, 86-89, 92; State's Exhibits A, B, and C. Mother was inconsistent and noncompliant with her substance abuse treatment and mental health treatment, and frequently missed "color codes" for drug testing throughout the case plan period, missing 59 out of 111 color codes. T. at 17-18. When she did comply with color codes, she frequently tested positive for amphetamines, methamphetamines, cocaine, and THC. T. at 18. At the time of the hearing, she was still homeless. T. at 82, 87.

{¶ 23} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 24} As for best interests, the caseworker testified the child was in foster care and the child's needs were being met.  T. at 104-105.  The child was comfortable and happy in the foster home.  T. at 105.  The caseworker testified although mother visited the child, she did not assume the parenting role, relying on the caregivers at the time to care for the child.  T. at 106.  The caseworker opined the child's need for stability, permanency, and stableness through adoption would outweigh any damage that could occur as a result of severing parental rights.  T. at 107, 112.  The guardian ad litem opined the granting of permanent custody to SCJFS was in the child's best interest.  T. at 113.  The trial court concluded the child needed a stable and loving environment by way of adoption and therefore permanent custody to SCJFS was in the child's best interest.

{¶ 25} Based upon the testimony presented, we do not find the trial court erred in terminating mother's parental rights and granting permanent custody of the child to SCJFS.  We find sufficient evidence to support the trial court's decision; we do not find a manifest miscarriage of justice.

{¶ 26} Assignments of Error II and III are denied.

{¶ 27} For the reasons stated in our accompanying Opinion, the judgment of the Stark County Family Court is AFFIRMED.

{¶ 28} Costs to Appellant.

By: King, P. J.

Baldwin, J. and

Popham, J. concur.